UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO CHAVEZ MENDOZA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:23-cv-00350-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 13). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff argues as follows:

1. The ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations.

2. The ALJ's Step 5 determination is unsupported by substantial evidence as there are clear discrepancies between the job descriptions and the limitations set forth in the RFC.

3. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer any reason for

rejecting Plaintiff's subjective complaints.

(ECF No. 13, p. 2).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

**I.   ANALYSIS**

**A.   Medical Opinions**

The Court first turns to Plaintiff's argument that the RFC is not supported by substantial evidence because the ALJ erred in considering the opinion of the psychiatric consultative examiner, Dr. DeBattista. Plaintiff challenges the following RFC assessed by the ALJ:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple, routine, and repetitive tasks but not at a production rate or pace (e.g. assembly line work); he is able to perform simple work-related decisions; he is able to tolerate few changes in a routine work setting defined as performing the same duties at the same station or location day-to-day; he can have occasional interaction with supervisors; he can have occasional contact with coworkers with no tandem tasks or team type activities; and he can have no contact with the public.

(AR 19).

Because Plaintiff applied for benefits in 2019, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 21). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw

> according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

Here, the ALJ discussed the opinion of Dr. DeBattista as follows:

> Dr. DeBattista opined that the claimant can complete one or two step instructions, is unable to complete complex and detailed instructions, has moderate to marked issues interacting with coworkers and the public, and moderate to marked issue with concentration. Also, the claimant has a moderate issue with attendance, and a moderate to marked issue with supervisors (Exhibit B5F/4). The undersigned finds this opinion not persuasive. This is internally inconsistent with the findings from the consultative examination. The claimant had good eye contact, no evidence of hallucinations, intact judgment, intact insight, and normal orientation. Also, as noted in his function reports, the claimant can drive a car, handle his finances, and make his own meals, which requires a modest level of concentration (Exhibits B6E & B10E).

(AR 22).

Plaintiff argues that the ALJ's first reason for finding Dr. DeBattista's opinion to be not persuasive, i.e.., that the opinion was internally inconsistent with Dr. DeBattista's own

3

examination findings, is legally insufficient because the ALJ "never properly discussed" the examination findings, which "actually demonstrated Plaintiff had an abnormal mood; an abnormal affect; could only recall one out of three objects after five minutes; made four errors on the first seven serial three's; and was unable to interpret a proverb." (ECF No. 13, p. 8) (citing AR 476). However, elsewhere in the ALJ's decision, the ALJ discussed Dr. DeBattista's examination of Plaintiff, specifically noting the examination findings as to Plaintiff's "depressed and anxious mood," "constricted affect," and "errors in his concentration and calculation test." (AR 20) (citing AR 476). Thus, the ALJ did not mischaracterize Dr. DeBattista's examination findings or ignore medical evidence from Dr. DeBattista that was favorable to Plaintiff. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (an ALJ cannot "selectively" rely on evidence to find a claimant not disabled, while "ignor[ing]" evidence favorable to the claimant). While Plaintiff argues the examination findings support a different conclusion, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

Plaintiff also argues that the ALJ did not address how Dr. DeBattista's opinion was consistent with the opinion of the state agency psychological consultant as "all providers opined Plaintiff [should be limited] to simple one to two step instructions." (ECF No. 13, p. 9). However, the ALJ found the Disability Determination Service (DDS) evaluation of Plaintiff to be only partially persuasive:

> [T]he Disability Determination Service (DDS) conducted an initial evaluation of the claimant. They opined that the claimant has severe mental health impairments. In addition, they found that the claimant has moderate limitations in all four domains of the "paragraph B" criteria. They opined that the claimant has moderate limitation with detailed instructions, working around others, completing a normal workweek, interacting with the public, interacting with coworkers, responding to changes in the workplace, setting realistic goals, and being aware of normal hazards (Exhibit B2A). On reconsideration, DDS added that the claimant was capable of completing one to two step tasks (only), can maintain concentration, persistence, and pace, can adapt, and relate to others (Exhibit B4A). The undersigned finds [this] opinion partially persuasive. As noted above, the claimant has nightmares and panic attacks. The claimant has endorsed hallucinations. The claimant also has had depressed and anxious mood with constricted affect. In addition, the claimant has endorsed improvement taking his medication with no side effects. Additionally, the claimant reported that he uses marijuana daily (*See* exhibits B1F, B3F, B5F, B7F, B10F, and B12F, supra). These findings in the

> objective medical evidence generally support most of the DDS opinion that the claimant has moderate limitations. However, on reconsideration, DDS added that the claimant is limited to one to two step tasks. This is a vague, non- vocationally relevant term as it does not explain the difference between one to two step instructions as compared to the more precise limitation of "simple instructions." Also, DDS stated that the claimant can adapt, maintain concentration, and relate to others. This seems to be internally consistent with their opinion that the claimant has moderate limitations in detailed instructions, paying attention, interacting with others, and adjusting to changes in the workplace. Therefore, the overall DDS opinion is partially persuasive as it is mostly (not completely) supported by the objective medical evidence.

(AR 21-22).

The ALJ endorsed and found persuasive the DDS opinions that Plaintiff had moderate limitations in all four "paragraph B" criteria: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself. (AR 18-19). However, the ALJ specifically did not endorse the second DDS opinion that Plaintiff be limited to "one to two step tasks."[1] In discussing the DDS opinions, the ALJ identified two ways in which the limitation to "one to two step tasks" was internally inconsistent.[2] First, the DDS consultant did not account for the difference between the limitation to one to two step instructions and the DDS consultant's other findings that Plaintiff is "[n]ot significantly limited" in "[t]he ability to understand and remember very short and simple instructions" and "[t]he ability to carry out very short and simple instructions." (*Compare* AR 100

---

[1] The Court notes that Plaintiff does not argue that the ALJ erred in considering the DDS opinions or advance any argument that the ALJ's reasons for partially discounting the DDS opinions were insufficient. Plaintiff merely argues that the ALJ failed to discuss how the opinions were consistent with one another with respect to the limitation to one to two step instructions. (*See* ECF No. 13, p. 9).

[2] The ALJ also stated the one to two step instruction was "a vague, non-vocationally relevant term because it does not explain the difference between one to two step instructions as compared to the more precise limitation of 'simple instructions.'"  The Court notes that a limitation to one to step instructions is *not* a vague term that is irrelevant to vocational findings. The Court disagrees with this statement, as a limitation to one to step instructions is *not* a vague term that is irrelevant to vocational findings.  *See Sally C. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-cv-1262-MO, 2023 WL 6891386, at *3 (D. Ore. Oct. 19, 2023) ("There is nothing vague, however, about a medical opinion that limits a claimant to one-and two-step tasks; this is common parlance of state medical examiners that fill out disability determination explanations for social security claimants."). However, as discussed above, the relevant DDS opinion also stated that Plaintiff was not significantly limited as to "simple instructions." The ALJ correctly identified that the DDS opinion failed to explain this inconsistency.

5

("[claimant] is capable of understanding, remembering, and carrying out simple 1-2 step task" with AR 96-97 (rating Plaintiff's understanding and memory limitations) and AR 97 (rating Plaintiff's concentration and persistence limitations)). Second, the ALJ noted the limitation to one-to-step instructions was not consistent with the DDS consultant's findings that Plaintiff is "[n]ot significantly limited" in his "ability to maintain attention and concentration for extended periods" and only "[m]oderately limited" in his "ability to understand and remember detailed instructions" and "carry out detailed instructions." (AR 97). The ALJ's reasoning as to the inconsistency of the DDS opinion is legally sufficient. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."). Similarly, the ALJ did not endorse Dr. DeBattista's opinion that Plaintiff can only "complete one or two step instructions" and "is unable to complete complex and detailed instructions" because it was internally inconsistent and not supported by third-party reports of Plaintiff's activities. Although Dr. DeBattista's opinion and the second DDS opinion are consistent to one another on this one point, the ALJ provided valid reasons for the weight given to them due to their internal inconsistencies.

Further, the ALJ also noted that Dr. DeBattista's opinion was at odds with the third-party function reports of Plaintiff's sister in 2020 and 2021, which noted that Plaintiff performed activities requiring concentration such as driving, handling his own finances, and preparing his own meals. (AR 22) (citing AR 280-290, 302-312). This reasoning evokes the supportability factor. While Plaintiff contends the ALJ errs by relying on infrequent and isolated instances of improvement, (ECF No. 13, p. 8), Plaintiff does not otherwise challenge the ALJ's consideration of the third-party function reports or argue that the ALJ may not consider the reports. Indeed, "testimony from lay witnesses who see the claimant every day is of particular value," *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996), and constitutes "competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony[.]" *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that a conflict between daily activities and medical opinion may justify discounting medical opinion).

6

Accordingly, the Court finds that the ALJ provided legally sufficient reasons to discount the opinion of Dr. DeBattista.

**B.     Subjective Symptom Testimony**

Plaintiff argues the ALJ erred by merely summarizing the treatment records that detailed Plaintiff's reported symptoms and only mentioning Plaintiff's testimony when addressing the "paragraph B" criteria. (ECF No. 13, p. 12).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

Here, the ALJ extensively discussed Plaintiff' subjective complaints when determining Plaintiff's "paragraph B" criteria:

> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant has a high school education. The record shows that the claimant filed an adult function report. He said that he has difficulty staying on task. He said that he can handle his finances. He said he has difficulty understanding, and following instructions. He said he can only pay attention for three minutes (Exhibit B1E). In the objective medical evidence, it was noted,

7

during an examination, that the claimant had cooperative behavior. The claimant had normal cognition. The claimant had normal orientation and organized thought process. The claimant had anxious and depressed mood. The claimant had average intelligence (Exhibit B7F/17).

In interacting with others, the claimant has a moderate limitation. The claimant filed an adult function report indicating that he has difficulty staying on task, but that he can also shop at the store (Exhibit B1E). The record shows several notations that the claimant suffers from panic attacks (Exhibit B12F/3). A licensed clinical social worker said that the claimant has no social life or job due to his disability (Exhibit B12F/4). During an examination in December 2021, it was noted that the claimant was having nightmares. It was noted that the claimant reported panic attacks three times a day (Exhibit B12F/21). However, during a February 2021 consultative examination, the claimant presented as casually and neatly groomed with good eye contact (Exhibit B5F/3). Additionally, the claimant testified that he sometimes stops at the grocery store on Fridays after medical appointments, demonstrating that he does not require complete isolation from others (Hearing Testimony).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant filed an adult function report and reported that he has difficulty staying on task. The claimant said that he can make meals and complete some housework. He said that he can drive a car, an activity that requires sustained concentration, and can go shopping at the store. He also said that he can handle his finances. He said he has difficulty understanding, and following instructions. He said he can only pay attention for three minutes (Exhibit B1E). During an examination in July 2021, the claimant had cooperative behavior, normal motor activity, normal orientation, and organized thought processes. The claimant endorsed hallucinations, but denied suicidal and homicidal ideation. The claimant was anxious. The claimant had normal insight and normal judgment. The claimant had average intelligence (Exhibit B7F/5-6). At the hearing, he testified that he drives to appointments and sometimes to the grocery store after appointments (Hearing Testimony).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant filed an adult function report. He said that he has difficulty staying on task. He said that his mental health symptoms inhibit his ability to tend to his personal care. He said he can only pay attention for three minutes (Exhibit B1E). During an examination, the claimant was well groomed. The claimant reported having nightmares (Exhibit B3F/43). During another examination, the claimant made good eye contact. The claimant had normal speech. The claimant had depressed affect and anxious mood. The claimant had constricted affect as well (Exhibit B5F/3). The claimant testified that he is able to drive, grocery shop independently and fix microwave meals (Hearing Testimony).

(AR 18-19) (footnote omitted).

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."

(AR 21). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

In formulating the RFC, the ALJ noted Plaintiff's subjective complaints but discounted their degree of severity:

> Therefore, the undersigned has determined that the claimant has severe impairments, which cause functional limitations. However, the objective medical evidence does not support the severity of the claimant's allegation that he is incapable of working. The claimant filed an adult function report. He said that he has difficulty staying on task. He said that his mental health symptoms inhibit his ability to tend to his personal care. The claimant said that he can make meals and complete some housework. He said that he can drive a car and can go shopping at the store. He also said that he can handle his finances. He said he has difficulty understanding, and following instructions. He said he can only pay attention for three minutes (Exhibit B1E). When he filed for disability, the claimant alleged that his anxiety disorder and panic attacks had limited his ability to work (Exhibit B4E). The claimant completed another adult function report. He added that he has difficulty with his memory and with his concentration (Exhibit B5E). The claimant's sister completed two third-party function reports and stated that the claimant is functionally limited (Exhibits B6E & B10E). The undersigned considered these reports, but viewed them within the context of the entire record, including the medical reports. While the undersigned accepts that the claimant is functionally limited, these reported observations do not alone support a conclusion that the claimant is incapable of working within the constraints of the established residual functional capacity assessment. The claimant testified that he lives with his brothers. He said that he is home alone during the day while his brothers work. He said he drives himself to his doctor's appointments and also goes to the grocery store. He said that he sometimes exhibits a panic attack at the grocery store and leaves. The claimant testified he has a hard time leaving the house. He said that he takes his medication. He said that he watches movies with his cousin. He said that he will cut the grass and also handle his finances.
>
> As noted above, the claimant has endorsed nightmares and panic attacks. The claimant has endorsed hallucinations. The claimant also has had depressed and anxious mood with constricted affect. In addition, the claimant has endorsed improvement taking his medication with no side effects. The claimant has never been hospitalized for his panic attacks. Even though he has alleged several times he has difficulty leaving his home, the claimant goes to the doctor and to the grocery store. The claimant is able drive his car, an activity that requires sustained concentration. The claimant testified that he lives with his brothers. He said he watches movies with his cousin. The claimant also makes meals and can handle his finances. The objective medical evidence and the claimant's own admissions support that he is capable of a modest level of activity in his home and outside of his home. He testified that his medication makes him dizzy, but the objective medical evidence noted that he was not having any medication side effects (See

>exhibits B1F, B3F, B5F, B7F, B10F, and B12F, supra). In viewing the evidence in the light most favorable to the claimant, the residual functional capacity has addressed the claimant's condition by limiting him to simple tasks, simple decisions, and limited contact with others. No single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggest that the claimant is not as limited as is alleged. For all the foregoing reasons, the undersigned concludes that since the date of alleged onset of disability the claimant has been able to perform a range of work consistent with the residual functional capacity as assessed.

(AR 22-23).

The ALJ's robust discussion of Plaintiff's subjective complaints is contrary to Plaintiff's assertion that the ALJ provided only a vague summary of the medical evidence that "offers no findings or conclusion as to what evidence undermines which portions of Plaintiff's alleged limitations." (ECF No. 13, p. 12) Such discussion shows that the ALJ considered Plaintiff's subjective complaints but ultimately did not find them to cause disabling symptoms because of evidence on record inconsistent with Plaintiff's allegations of disability, including examination records noting Plaintiff's cooperative behavior, normal cognition, and normal orientation and organized thought process. (AR 18) (citing AR 528, 516-17). *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Moreover, the ALJ noted that although Plaintiff alleges that "he has difficulty leaving his home, the claimant goes to the doctor and to the grocery store." (AR 23). Elsewhere in the record, the ALJ also noted that the medical evidence did not substantiate Plaintiff's claimed agoraphobia. (AR 20-21) (citing AR 516-17). Although the lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")

Further, the ALJ discounted Plaintiff's subjective complaints regarding his inability to work based on Plaintiff's reported activities of driving, going to the doctor and grocery store, watching movies with his cousin, managing his finances, and preparing his own meals. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the

claimant's allegations upon making specific findings relating to those activities."). Here, the ALJ's interpretation was rational, and the ALJ's decision must be upheld "where the evidence is susceptible to more than one rational interpretation." *Id.* at 680-81 (9th Cir. 2005) (internal citations omitted).

Lastly, the ALJ also considered Plaintiff's reported improvement with medication. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that improvement is a factor that can be considered for purposes of whether a claimant is disabled).

Thus, the Court concludes that the ALJ provided legally sufficient reasons to reject Plaintiff's subjective complaints.

### C. Step Five

Plaintiff argues that the ALJ's Step Five determination that Plaintiff could perform work as a hand packager (DOT 920.587-018), industrial cleaner (DOT 3381.687-018), and machine packer (DOT 920.685-078) conflicts with the ALJ's RFC, which limited Plaintiff to simple, routine, and repetitive tasks. (ECF No. 13, p.10). According to Plaintiff, because these jobs require Level 2 reasoning, they are "not compatible with a limitation to non-complex work." (*Id.*) Defendant argues that a limitation to "simple and routine tasks" is not incongruous to DOT occupations requiring Level 2 reasoning. (ECF No. 17, p. 16).

At step five, the ALJ must determine whether there are jobs available for the claimant in the national economy considering the claimant's age, education, work experience, and residual functional capacity. *See* 20 C.F.R. § 416.920(a)(4)(v). Specifically, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). To meet this burden, the ALJ may consider testimony from a vocational expert regarding the jobs a claimant can perform despite their limitations. *Gutierrez v. Colvin*, 844 F.3d 804, 806-7 (9th Cir. 2016) (citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)). "The *Dictionary of Occupational Titles*, a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides [this] analysis." *Gutierrez*, 844 F.3d at 807. The Ninth Circuit has held that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT— for example, expert testimony that a claimant can perform an occupation involving DOT

11

requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

The Dictionary of Occupation Titles defines Level 2 reasoning as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702. In *Zavalin*, the Ninth Circuit noted that a limitation to simple repetitive tasks appears to be consistent with Level 2 reasoning. 778 F.3d at 847 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). Further, numerous district courts have held that the ability to perform simple, routine, and repetitive tasks is equivalent to Level 2 reasoning. *See Gill v. Comm'r of Soc. Sec.*, No. 1:22-cv-01625-SAB, 2024 WL 1160500, at *14 (E.D. Cal. Mar. 18, 2024) ("[T]he Court finds no apparent conflict between Plaintiff's ability to understand, remember and carry out simple instructions and make simple work-related decisions as found in his RFC and jobs requiring Level 2 reasoning."); *Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("The Court recognizes, as defendant points out, that the weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work."); *Miller v. Kijakazi*, No. CV-20-1725-PHX-MTL, 2021 WL 5768811, at *8 (D. Ariz. Dec. 6, 2021) ("A limitation to work involving only 'simple tasks,' 'simple, repetitive tasks,' or 'simple, routine, repetitive work,' is consistent with the ability to perform Level 2 Jobs.") (citing *Zavalin*, 778 F.3d at 847); *John B. v. Comm'r of Soc. Sec.*, No. C22-5910-BAT, 2023 WL 6845297, at * 4 (W.D. Wash. Oct. 17, 2023) (citing cases).

In arguing that remand is warranted, Plaintiff cites to *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1003-1004 (9th Cir. 2015), which found a conflict between an RFC limiting claimant to "performing one- and two-step tasks, and the demands of Level Two reasoning[.]" *Id.* at 1003. Here, however, Plaintiff's RFC does not include a limitation to "one- and two-step tasks." And the Court has rejected Plaintiff's argument that the ALJ erred in discounting Dr. DeBattista's opinion that Plaintiff is only able to "complete one or two step instructions" and "unable to complete complex and detailed instructions." Accordingly, the ALJ did not err at Step Five by failing to resolved any conflict between the VE's testimony, which was based on the ALJ's

hypothetical questions relating an individual with Plaintiff's same RFC, and the DOT definition of Level 2 reasoning.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **March 25, 2024**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE